In re YELLOW CAB COOPERATIVE
ASSOCIATION, Debtor.

COLORADO PUBLIC UTILITIES
COMMISSION, Defendant–
Appellant,

v.

YELLOW CAB COOPERATIVE
ASSOCIATION, Plaintiff–
Appellee.

Civil A. No. 96–K–256.
Bankruptcy No. 93–23733 DEC.
Adversary No. 95–1604 DEC.

United States District Court,
D. Colorado.

April 12, 1996.

E. Hil Margolin, Denver, CO, for plaintiff.

Charles B. Hecht, Nichols & Hecht, LLC, Denver, CO, Jan L. Hammerman, Denver, CO, Neil L. Tilliquist, Assistant Attorney General, Denver, CO, for defendant.

## ORDER

KANE, Senior District Judge.

Chapter 11 Debtor and Appellee Yellow Cab Cooperative Association ("Yellow Cab") moves to dismiss this bankruptcy appeal or, in the alternative, to vacate the stay entered on February 23, 1996. Yellow Cab asserts the appeal is moot under *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449–50, 121 L.Ed.2d 313 (1992) because events have occurred while the appeal was pending that make the granting of "any effectual relief" to Appellant Colorado Public Utilities Commission (the "PUC") "impossible." I disagree.

## I. *FACTS*

Yellow Cab sought in the underlying Chapter 11 case to sell its assets to third-party taxicab operator Taxi Associates, Inc. ("Taxi Associates"). These assets include various certificates of authority issued by the PUC pursuant to which Yellow Cab provided taxi services. One of the assets Yellow Cab sought to sell was PUC Certificate No. 2378 & I (the "Certificate"), which authorized Yellow Cab to operate 600 cabs in the Denver-metropolitan area. For at least the past five years, Yellow Cab had been operating only 300 cabs.[1] Nevertheless, it sought to sell the full 600 cab authority to Taxi Associates. Various taxicab companies, as well as the PUC, objected to the sale as being anticompetitive and damaging to the public interest.

This appeal arises out of Yellow Cab's efforts in the above referenced adversary proceeding to prevent its competitors and the PUC from objecting to or otherwise impeding the sale of its full operating authority to Taxi Associates. The following is a chronology of the specific events relevant to the instant motion:

---

1. A more detailed description of the facts underlying this appeal is set forth in my Order Granting PUC's Motion for Stay Pending Appeal, published at *Colorado Public Utilities Comm. v. Yellow Cab*, 192 B.R. 555 (D.Colo. 1996). I incorporate by reference the opinion in that case.

1. *Late 1994—Early 1995.* Yellow Cab and Taxi Associates enter into an Asset Purchase Agreement whereby Yellow Cab agrees to sell its assets to Taxi Associates. Yellow Cab files a motion in the underlying Chapter 11 case for an order authorizing the sale of its assets outside the ordinary course of business and outside the plan of reorganization.

2. *February 8, 1995.* The bankruptcy court grants Yellow Cab's motion, authorizing the sale of assets outside the ordinary course of business pursuant to 11 U.S.C. § 363(b), (f), and (m).

3. *March 18, 1995.* Yellow Cab and an assignee of Taxi Associates file a joint application at the PUC to authorize a transfer of Yellow Cab's operating authority, including the 600 cab authority set forth in the Certificate, to Taxi Associates. Metro Taxi, Inc. ("Metro"), American Cab and the PUC Staff file written objections to the application, claiming Yellow Cab's authority had become dormant through non-use. Hearings were held in July 1995 before an administrative law judge (ALJ).

4. *September 14, 1995.* The ALJ issues an advisory opinion recommending to the PUC that Yellow Cab's operating authority had not become dormant and that it could be transferred, without modification, to Taxi Associates.

5. *September 28, 1995.* Yellow Cab initiates the instant adversary proceeding against the PUC, Metro and American Cab. Yellow Cab's Complaint seeks an order enjoining these parties from taking any action or making any further appearances in support of their objections to Yellow Cab's transfer petition.

6. *November 7, 1995.* The bankruptcy court grants Yellow Cab's request for preliminary injunction against Metro and American Cab, but denies it with respect to the PUC Staff. The court finds the PUC was exempt from the automatic stay under § 362(b)(4). On November 17, 1995, the bankruptcy court denies Yellow Cab's motion to reconsider the order denying the preliminary injunction.

7. *December 13, 1995.* The PUC issues its Decision No. C95–1260 (the "Transfer Decision") overturning the ALJ's recommendation and refusing to allow the transfer of authority under the Certificate in excess of 300 cabs. The PUC found the ALJ had applied an erroneous legal standard, found the unused authority under the Certificate had become dormant and concluded a transfer of Yellow Cab's full authority to Taxi Associates would damage the public interest.

8. *January 26, 1996.* In a reversal of the position taken in its November 7 ruling, the bankruptcy court issues an order permanently enjoining the PUC from enforcing the December 13 Transfer Decision. In its Order Granting Permanent Injunction, the court finds the Transfer Decision had the effect of "controlling" property of the estate in contravention of § 362(a)(3) of the Bankruptcy Code's automatic stay provisions.

9. *February 2, 1996.* The PUC files its notice of appeal in No. 96–K–256. At the same time, the PUC files a motion for stay pending appeal and for clarification of the January 26 Order.

10. *February 7, 1996.* Bankruptcy court conducts a hearing on the PUC's motion for stay and clarification. The court denies the motion for stay and amends its January 26 Order to direct the PUC "forthwith" to issue the Certificate to Taxi Associates. The PUC asserts that in its ruling from the bench, the court made clear that Taxi Associates bore the risk that ultimately it may not have full authority to operate 600 cabs under the Certificate if the PUC were successful on appeal.[2]

11. *February 8, 1996.* The bankruptcy court issues its Order Amending Order Granting Permanent Injunction dated January 26, 1996 and Denying Motion for Stay. Specifically, the court orders the PUC "forthwith to authorize [Yellow Cab] to transfer its total operating authority under the [Certificate] of 600 vehicles to Taxi Associates,"

---

**2.** No transcript of the February 7 hearing has been made available. Because this is a motion to dismiss, *see In re Whatley*, 169 B.R. 698, 700 (D.Colo.1994), I accept the PUC's assertion as true.

Order at 1, ¶ 2b, and further ordered the PUC to approve the transfer and to issue "all documents necessary to [effect] the transfer." *Id.* at ¶ 2c.

Also on February 8, the PUC complies with the court's February 7 Order, issuing the Certificate with the following caveat:

> This decision is subject [to] future modifications by the United States Federal Courts that may result from any appeal by the Public Utilities Commission of the January 26, 1996, Order, as amended.

12. *February 9, 1996.* The sale of assets from Yellow Cab to Taxi Associates closes.

13. *February 16, 1996.* The PUC files its Motion for Stay Pending Appeal in this court.

14. *February 23, 1996.* I issue an order granting PUC's motion for stay pending appeal, finding both that the balance of harms weighed in favor of the stay and the PUC had "raised substantial questions going to the merits of its appeal sufficiently serious to warrant the granting of a stay." *Colorado Public Utilities Comm'n v. Yellow Cab,* 192 B.R. at 558–59.

15. *March 4, 1996.* Yellow Cab files its Motion to Dismiss Appeal as Moot or, in the Alternative, to Vacate Stay Dated February 23, 1996.

16. *March 6, 1996.* Relying on my February 23 order granting the stay, the PUC rescinds its February 8 order issuing the Certificate to Taxi Associates. The PUC also directs its staff to issue a new Letter of Authority pursuant to its December 13, 1995 Transfer Decision limiting operating authority under the Certificate to 300 cabs.

## II. *DISCUSSION*

### A. *Mootness*

 It has long been settled that a federal court has no authority " 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *In re Osborn,* 24 F.3d 1199, 1203 (10th Cir.1994) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). "If an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Id.* (quoting *Church of Scientology,* 506 U.S. at 12, 113 S.Ct. at 449).

Yellow Cab asserts the issuance of the Certificate to Taxi Associates and the sale by Yellow Cab of its assets were just such events. Yellow Cab maintains no relief can be granted in this case because the PUC failed to obtain a stay until after the events occurred. Further, Yellow Cab argues the sale was made to a "good faith purchaser" and that under § 363(m) of the Bankruptcy Code, such a sale is not subject to invalidation on appeal. The only way relief could be granted to the PUC on appeal, Yellow Cab continues, is to take property away from Taxi Associates. The fact that neither Taxi Associates nor the Certificate is subject to this court's jurisdiction therefore "precludes 'any effective relief whatever' in this appeal." Mot. Dismiss Appeal at 7.

I agree with the PUC that § 363(m) [3] is inapplicable and that I have appellate jurisdiction. *See In re Joshua–Slocum Ltd.,* 922 F.2d 1081, 1084–85 (3d Cir.1990). In *Slocum,* the Third Circuit rejected the assertion that it lacked appellate jurisdiction to consider a landlord's appeal where the landlord had failed to obtain a stay of the Chapter 11 trustee's assignment of a particular shopping center lease to a good-faith assignee. The court found the assignment did not render the landlord's appeal moot where the landlord was not challenging the assignment of the lease itself, but the bankruptcy court's authority to excise a specific termination provision from it. *Id.*

---

3. Section 363(m) provides:
> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
>
> 11 U.S.C. § 363(m).

Similarly here, the PUC seeks neither to undo the sale of Yellow Cab's assets to Taxi Associates nor to challenge the bankruptcy court's February 1995 order approving the sale under 11 U.S.C. § 363(b). Instead, the PUC challenges the court's authority under § 362(a)(3) to enjoin it from exercising its regulatory authority to limit, in the public interest, the scope of the operating authority sold.[4] As in *Slocum,* I find § 363(m) to be inapplicable and conclude it does not operate to deprive me of jurisdiction over the appeal.

Further, I do not find the February 9 asset sale precludes me from granting any effective relief on appeal. If necessary and warranted as a matter of law, I can reverse the January 26, 1996 Order and deem unenforceable the court's injunction against the PUC. This would not require an unwinding or invalidation of the underlying sale to Taxi Associates, nor would it affect the fact that Taxi Associates succeeded to Yellow Cab's operating authority under the Certificate. *See Slocum,* 922 F.2d at 1086 (court could reverse bankruptcy court's determination that particular paragraph of the lease was unenforceable and order excising it from lease). It would simply be a determination that the PUC was authorized during the pendency of the automatic stay to exercise its regulatory power over the parties and the Certificate.

I therefore deny Yellow Cab's motion to dismiss this appeal as moot.

### B. *Motion to Vacate Stay*

■ In the alternative, Yellow Cab moves to vacate the Order Granting PUC's Motion for Stay entered on February 23, 1996. Yellow Cab's motion essentially is one for reconsideration: Yellow Cab asserts the Order was erroneous because the stay imposed alters, rather than preserves, the status quo.

I find the distinction academic, and reaffirm the February 23 Order.

According to Yellow Cab, the state of affairs before the dispute with the PUC arose was that it was authorized under the Certificate to operate 600 cabs in the Denver-metropolitan area. The status quo was altered when the PUC issued its December 13 Transfer Decision finding that half of Yellow Cab's operating authority had become dormant and reducing its authority to 300 cabs, and was revived when the bankruptcy court enjoined the PUC from enforcing the Transfer Decision. The February 23 Order staying the injunction, in turn, returned the parties to a state of affairs different from the status quo.

The PUC looks at the same set of facts and argues the status quo both before and after the Transfer Decision was that Yellow Cab operated 300 cabs. By staying the bankruptcy court's order of January 26, the PUC contends, I preserved the status quo by ensuring that the successor to Yellow Cab's operating authority operated no more cabs than Yellow Cab did pending review of the bankruptcy court's decision.

Both views are defensible. Considering the facts and the history of this dispute in their entirety, however, I find the PUC's view to be more sensible. Without a stay, Taxi Associates would be free to increase its fleet to 600 cabs in the Denver-metropolitan area, twice the number operated by its predecessor, Yellow Cab. Such an increase during the pendency of the appeal would deprive the PUC of any meaningful relief should it ultimately prevail on the merits. In my February 23 Order, I found the PUC had shown a sufficient likelihood of prevailing on the merits of its appeal that a stay was warranted. Yellow Cab does not challenge this finding in its motion to vacate the stay.

---

4. I reject Yellow Cab's assertion that the adversary proceeding and sale order were so "intimately connected" that the principle of finality embodied in § 363(m) should extend to the present appeal. *See* Mot. Dismiss at 6–7 (citing *In re Stadium Mgt. Corp.,* 895 F.2d 845 (1st Cir.1990) and *United Mine Workers of America Combined Fund v. CF & I Fabricators of Utah, Inc.,* 169 B.R. 984, 993 n. 34 (D.Utah 1994)). In those cases, the "related" motions were part and parcel of the motion for approval of sale. They sought the imposition of certain conditions of sale—e.g., that the property sold be free of claims or right of set-off—and were considered at the same time as the motion for approval of sale and incorporated in the court's order granting the motion. Requests for similar conditions were made and incorporated in the bankruptcy court's February 1995 Order authorizing the sale of Yellow Cab's assets. The PUC does not challenge that Order on appeal.

Were I to find that the bankruptcy court erred in enjoining the PUC from exercising its regulatory authority over the parties and the Certificate, an interim increase in the number of taxis operated under the Certificate would effectuate the "destructive competition" and "damage to the public interest" the PUC lawfully had sought to prevent. The avoidance of such a result is precisely the purpose of a stay pending appeal.

### III. *CONCLUSION*

Under the facts of this case, I find the February 9 sale of Yellow Cab's assets to Taxi Associates neither renders the PUC's appeal moot nor precludes the granting of effective relief. I have appellate jurisdiction notwithstanding the fact that the sale occurred before entry of a stay because the "good faith purchaser" doctrine of 11 U.S.C. § 363(m) is inapplicable. The order approving the sale of Yellow Cab's assets is not the order from which the appeal is taken. The issue that *is* before me on appeal—i.e., the bankruptcy court's authority to enjoin the enforcement of a regulatory decision issued by the PUC—was not rendered moot by the February 9 sale. If necessary, I can reverse the bankruptcy court's determination that the Transfer Decision is unenforceable under § 362(a)(3) of the Bankruptcy Code's automatic stay provisions. Under those circumstances, the Certificate to which Taxi Associates succeeded would be subject to the findings in the Transfer Decision and the PUC's continuing regulatory authority.

Further, I find no basis upon which to reconsider or vacate the February 23 order granting stay or your findings that the PUC had met the requirements for obtaining a stay. Accordingly,

IT IS ORDERED THAT Yellow Cab's motion to dismiss the appeal, or, in the alternative, to vacate the stay is DENIED.